Thank you for being here. Thank you, everybody, for your time. So the threshold question in this case, it's a relative and relatively simple one. Was the traffic sign properly posted in accordance with the manual on uniform traffic control devices as is required by Illinois law? That's the question that needs to be answered. And I know that you all had the opportunity to read the various briefs, read the record and everything like that, but I figured I would briefly recite the facts as I understand them because it makes it a little easier for us to understand this argument. So the facts, and I don't believe that they're in dispute. Mr. Knight is the defendant. He's a CDL driver who was ticketed for driving his semi-tractor-trailer combination over a weight-restrictive bridge on Smith Road in Brooklyn. On that day, Mr. Knight, he was on an I-355 southbound in order to connect to I-80 in order to make a delivery to a nearby Amazon plant in Joliet. Due to construction and there was an accident, Mr. Knight turned off onto southbound Illinois Route 171 with the intention to connect to I-55 and use I-55 to get to Joliet. He testified that the reason he wanted to connect to I-55 instead of just staying on Route 171 was because he felt the tollway was safer. There's a lot of small bridges on Route 171. So in an attempt to get to the toll road, Mr. Knight turned right from southbound Route 171 onto Smith Road, which was unknown to him at the time. That's actually a road with a 10-ton weight limit, and further down there's a bridge with a 6-ton weight limit. That was downgraded from 17 tons. So it should be noted that the undisputed evidence that came out during trial was that there was no signs on Route 171 to indicate to drivers who were planning to turn onto Smith Road that it was a weight-restricted road. Nor were there any postings providing that Smith Road was a no-truck route, despite the fact that no commercial motor vehicle, whether it was empty or full, would have been able to go down that road. I don't think there's a CMV that weighs any less than 10 tons. But at any rate, the evidence also showed that on the westbound side of Illinois Route 171 in Smith Road there's a strip mall, a brick building, and that the weight limit sign that was on Smith Road was well behind that strip mall. So essentially it was not visible to somebody who was on Route 171. And that's what Mr. Mack testified to. It wasn't until after he took that right turn onto Smith Road, he was a couple hundred yards into it, when he noticed, hey, this is a weight-restricted road because it was previously excreted by that building. So Mr. Powell was completely on the truck and completely on Smith Road? Yes, exactly. He completed his right turn. He was on the road. That's when he saw the sign. He was a couple of meters down. Mr. Powell, he was not charged with any liability? No, he was charged ultimately with overweight on the breakdown structure. So it was at that point that he was on Smith Road that he stopped. He assessed the situation and concluded it's not safe to back up into the oncoming traffic. There was a traffic jam behind him. So what he tried to do was go forward to find any opportunity to turn around. That's what he testified to. The only opportunity that could have possibly been feasible was there was an adjacent road called Tamman Road, but that one was very clearly a no-truck route. It was posted, no truck sign, and it had a three-ton weight limit, so that wasn't an option. Eventually, he did cross over that weight-restricted bridge, and at that point, he was on the road. Could he have turned into the strip mall that was there? Could he have turned into the strip mall? I believe that it came out that he didn't feel that it was safe for him to pull into that strip mall to do that. So those are the facts. I should also mention that theoretically, had he kept continuing, he would have eventually hit one of the truck routes. So, as stated in our brief, Illinois, we've adopted the MUTCD, which is the Manual Uniform Traffic Control Devices. The reasons why we did that are clear. It's to have a uniform standard that's easy to understand and everybody can comply with it. We don't want this county to say, red means stop, green means go, but this county say, green means go, red means stop, right? We want everybody to know when you see that red octagon, you know to stop. But the thing is, you have to actually see the sign in order for an alleged violator to have that be used against them. And the reason I say that is, citing Section 6.5 of ILCS 5-11-305C, that sets forth the remedy when soundage is improper. And that's what we're arguing. It provides that, no provision of this Act for which official traffic control devices are required shall be enforced against an alleged violator if at the time and place of the alleged violation, an official device is not in proper position and sufficiently legible to be seen by an ordinarily observant person. So, that's what the code says. So the question is, who has that burden? Obviously, the burden starts off on the defense, because the fact that there was a ticket that is prontofacial evidence that he committed a violation. So, we filed, the defense filed an extensive affirmative defense in this case that was based on the MUTCD. It had various citations and figures in it. And essentially, that ends up shifting the burden. And the reason I say that is because in another case, Village of Algonquin v. Sado, the appellate court held there that the burden wasn't on the Village of Algonquin to show that the sign complied with the MUTCD, but it was the defendant's burden to place some evidence on record of the topic prior to the burden shifting. That's exactly what happened in this case. We placed evidence on record showing that the signs weren't proper in our affirmative defense. At that point, the burden shifted to the state to show that the signs were proper. And the affirmative defense, we cited a couple different things I just want to point out, too. We provided evidence that showed that the wait limit signs cannot be seen until one pulls on the Smith Road already. That there's not sufficient wind to turn around. And that the one road that connects back to Illinois, Route 171, is posted with a no-truck sign. That was Tammany that I mentioned. We also argued that what should have been there is there should have been a selective exclusive sign, a no-truck sign, posted in advance to comply with the statute. It needs to be placed on the right-hand side of the roadway at an appropriate distance from the intersection so that it's clearly visible to all road users. In this case, as stated, there was no sign on Route 171 saying that Smith Road was a no-truck route. So, what we would have had to do is, obviously, we put on, we set forth sufficient evidence to say, hey, this sign was not proper. That then shifts the burden to the state to show that the sign was proper. So that's what the question that had to be answered was. However, and respectfully, rather than address the burden shift, what the trial court judge essentially did was to avoid answering that question, she, I would say, incorrectly interpreted our affirmative defense as a necessity defense. Where he had no choice but to continue down that road. However, that's not what that affirmative defense was. It was an affirmative defense based on the MATCD. At no point do we call it a necessity defense. At no point do we say he had no other options. That's not what we were arguing. We were arguing that the signage wasn't proper in pursuit of the statute. It couldn't be used against him, or rather enforced against him. You're not making an argument that you're referring to the signage on the vehicle. In our affirmative defense, actually, we do, we cite section 1.8.03 of the MATCD. Basically, we say that traffic control devices have to be placed in a position to permit adequate time for response. One thing that we are arguing is that that sign that was placed for the bridge, at least we're arguing, did not provide adequate time for the defendant to take action. That's one thing that we were arguing. Again, it's an issue where it could be that reasonable minds differ, but we never actually got to that point. Essentially, we were arguing that both signs, the one for Smith Road and the one for the bridge, were not proper. That's what we put forth. Does that answer your question? Yeah. Okay, thank you. Now, what the trial court stated in her ruling, she did explicitly call it a necessity defense. Again, I'm arguing that it was a necessity defense. She said, and I quote, Here's where I think that, I know you filed for the necessity defense as well, I think where that fails is the fact that there was another option for the defendant, and truck drivers, I think, get into these predicaments a lot where they realize they can't be someplace. So that's what, so she calls it a necessity defense. I believe that the attorneys are also going to argue why we're incorrect because of the necessity defense. They cite it as a necessity defense several times in their brief. Quite frankly, the issue with that, though, is that it was a burden-shifting defense based on the MUTCD and not a necessity defense. What ends up happening, in essence, and I know she doesn't explicitly say that this is what she's doing, but it sounds like instead of addressing that issue, we were using some kind of comparative fault analysis. I don't know if you want to call this a criminal case, quasi-criminal. It's not a civil case. It's a yes or no question, guilty or not guilty. He could have taken these steps instead, or maybe the signs weren't proper, but it's yes or no. Was the sign proper? If the signs were proper, then obviously it would be a guilty. If they were not proper, then it would be a not guilty. However, we just, that question was never answered by the trial court. So respectfully, based on all of that, we would ask that the finding of guilt be reversed or, in the alternative, that it be remanded so that the trial court could enter a specific finding as to whether or not the signs were properly posted. Any questions? Mr. Carroll, what type of sign are you suggesting was required on 171? On 171, we argue, at least in our affirmative defense, that it should have been a no truck sign, that that should have been designated as a no truck route, due to the fact that no trucks would be able to go down that road. Well, trucks under the weight could go down that road, correct? Theoretically, if there was a truck under that weight, then it would be able to. But further down that road, again, there was a six-ton weight on the bridge. I don't know of any CED that weighs less than that weight. So essentially, we are arguing that it should be a no truck route. Or at the very least, the problem is, you don't know until you're already all the way onto Smith Road that that is a weight-restricted road with a further weight-restricted bridge. You can't see either of the signs until you're already on the road and down. And that's our opinion. You're arguing that the NUCTD requires a sign prior to the intersection of Smith Road. Yes, it's called a selective exclusion sign. And that requires, let me see, I have it right here. Selective exclusion signs like those placed on Tamman Drive, which is that other adjacent road, should be placed on the right-hand side of the roadway at an appropriate distance from the intersection, so as to be clearly visible to all road users turning into the roadway that has the exclusion. So you would have to know Smith Road is restricted prior to turning onto Smith Road. What was the argument of the record as to the impact of placing or was there an argument that the bridge sign was improperly placed? I believe that that was addressed in the affirmative defense. I don't know who ended up actually at trial and discussed whether or not that sign was, but I do, I would say that in the affirmative defense, we are arguing that that sign was improperly placed. Thank you. Thank you. Mr. Atwood. Good afternoon. Good afternoon, Your Honor. Good afternoon, counsel. My name is Nicholas Atwood and I represent the people of the state of Illinois in this matter. I believe defense counsel said it correctly when issuing these cases, whether he was guilty or not guilty of traveling with an overweight vehicle over an elevated structure. There was some discussion on whether or not this was a question of burden shifting. Even if it is a question of burden shifting, what the evidence showed at trial was that under any standard, the defendant was going to be found guilty of this. And the main focus that the defendant has is the placement of this sign. The defendant does correctly know that Illinois has adopted the Uniform Traffic Control Device provision. What the defendant does not know is that weight limit signs have been specifically excluded from that. The Illinois supplement to the NUTCD section 2B.59 replaces the NUTCD section on weight limits, specifically with signage. That section provides, quote, weight limit signs shall be located immediately in advance of the section of highway or structure to which it applies. In the case of an extended length of restricted roadway, it shall be placed on the right-hand side approximately 25 feet beyond the intersecting roads so as to be visible to all vehicles turning on the restricted roadway. What that provision is saying is that the weight limit sign, in this case the Smith Road six-ton weight limit sign, is to be placed on the right-hand side of the road in which the structure is located, which is Smith Road, not Route 171. And that sign is approximately 25 to 50 feet from the intersection of Smith Road and Route 171. The Illinois traffic code states that the purpose of traffic signage is to provide advance notice to mowers so compliance can be obtained. Compliance is an important word. It's not avoidance, it's compliance. Defense counsel and the defendant are advocating for a sign that would mean avoidance of the road entirely. But the problem is defense counsel advocates for a no truck sign. As your honors have questioned, this isn't a no truck road. Trucks under six tons, trucks under ten tons can travail on portions of this road. There are a variety of trucks that meet this standard. UPS trucks, FedEx trucks, commercial food delivery trucks, furniture moving trucks. All of these trucks can fall under the weight limit for Smith Road specifically and even some of these trucks, specifically the delivery style trucks, depending on how much they're carrying, can meet the six-ton weight limit for the bridge. So it's clear a no truck sign would not be a proper road marker for this case. Secondarily to that, defense counsel cited 625 ILCS 511-305C which talks about the proper positioning. 511-305D states that when a sign is placed as directed, it is presumed compliant. So when you look to that quotation from the Illinois supplement to the traffic control device manual, that supplement indicates that that sign has been placed appropriately in that position on the right-hand side of the road. There are two signs. Two separate signs. Two separate weight limits. Correct. Which center are you talking about? The six-ton weight limit for the obstruction. The ten-ton weight limit for the road is not what the defendant was ticketed for. He was guilty of violating that statute because his vehicle weighed 32,000 pounds as soon as he turned onto the road, but he wasn't ticketed for that. So he technically doesn't have standing to challenge that because that's not what he is in court for. He's only in court for the elevated structure ticket which required him to traverse the bridge which had the six-ton weight limit. So that's the question before the court. The ten-ton road weight limit is sort of a red herring. It doesn't factor. If he had been ticketed with that, it would be a different story, but that's not why we're present. So we're only concerned with the bridge. And Section 2B.59 specifically talked about immediately in advance of the highway or structure, the bridge being the structure in this case. It does no good to tell someone of a bridge on a road that they're not traveling on. It's only going to sow confusion amongst motorists. Just like a sign that says no trucks, it only sows confusion when some trucks are in fact allowed. The issue is, was there notice to this defendant that would have allowed him to comply, not avoid, this section of road? And the defendant's testimony established that fact. The defendant testified when he turned onto Smith Road, he almost immediately saw the weight limit sign that said he had a six-ton limit for the bridge. He stopped in front of that sign, and at this point he had a moment to take stock. He had three options available to him. The first, he could attempt to back into the convenience store parking lot and turn around. The second, as the trial court noted in its decision, there is a section on the southwest corner of Smith and Route 171 that is partially paved, partially gravel. He could have attempted to turn around there. The third option being he could have ignored the traffic sign that told him of the weight limit and proceed on across the bridge, which is ultimately what he did. The trial court also noted in its ruling that the defendant could have called police and asked for a spotter. It's common knowledge people that drive regularly will see the occasion that police will help semis back away from the bridges, back away from roads that have weight restrictions on them. But the fact of the matter is, the defendant never attempted any of these other options. He never attempted to back up. He never attempted to pull over to the side. He never called 911 to ask for a spotter, which ironically would have been there within a couple of minutes because the arresting officer was just a mile or two down the road waiting for someone to come across that bridge. So had the defendant taken any of those steps, he could have complied with the weight limit sign, but he chose not to do so. In essence, the defendant is asking this court to excuse his desire to get home quicker because he testified he didn't want to go on the interstate because there was construction and an accident. So the defendant took an alternative route to return his truck to the Joliet Amazon facility, and it was empty, as the record indicates. So the defendant just needed to get home, so he took a shortcut. And it ended up having to cross what was previously a bridge that was suitable for that weight. But in June of 2019, a new sign was placed up, and that was about two months before this ticket. It indicated the weight limit had been lowered. The defendant, in their trial memorandum, indicated that the bridge had been reduced in weight, and they cite the bridge number. If you look up that bridge number on the report, it indicates that that bridge specifically is in quite poor condition, which would explain why the Department of Transportation and their engineers have reduced the weight for traveling on that bridge. One thing I do want to note, there is in the Illinois Supplement some guidance. That is offered with specifically these types of situations. And it does say that you can advance, you can place advanced signs. It says they should be erected at appropriate junctions that will permit a driver of the affected vehicle to choose an alternate route. But the fact of the matter is, that's an advisory opinion. It says so in the current case, which the defendant cites in his brief. Currently noted that shall, should, may, should as an advisory situation. So what we have here is a sign that was lawfully placed pursuant to Illinois regulations, which creates a presumption that the sign is compliant with Illinois law. That's where defendants attempt to shift the burden of fate, because it has not met that presumption that this sign is properly placed. Secondarily, even if we found the defendant met his burden, the fact remains he did receive notice of that bridge because he stopped. He took a moment to look around. And this is where the court, I think, gets confused with the necessity defense, where they're looking at were there other options available to this defendant specifically. And as I listed earlier, there were at least two other options available. The officer could have even halted traffic on Route 71 if it was necessary to back him out of that intersection. Because the alternative is that the defendant could have crossed this bridge. It could have collapsed. He could have been injured. Massive damage to public infrastructure could have been caused. So there were other alternatives, but the defendant decided unilaterally that he wasn't going to concern himself with taking those more appropriate steps, and he decided to proceed and take his chances, and that's when the officer caught him doing so. And with that, the people would ask if this court affirmed the defendant's conviction in the sentence. Alternatively, if this court does find that the defendant presented enough evidence to shift his burden and answers that question, the people believe that a remand to allow rebuttal evidence would be appropriate in this circumstance. Do your honors have any further questions? I thank you for your time. Thank you, Mr. Atwood. Mr. Cobb? Yes, sir. As cited in our criminal defense, as well as it's in our brief, page 20, we have a figure. It's figure 2B-11, which lists a handful of selective exclusive signs, such as the no truck sign that I discussed earlier. One of the possible signs, even if we were to agree that there could be trucks that are under 6 tons, one of the possible signs, figure 5-4, is a no commercial vehicle sign. I don't think there could be any commercial motor vehicle that weighs less than 10 tons, a commercial vehicle, one that you would need a special commercial license in order to drive. That could be one of the signs that could have been in place on Route 171 prior to turning onto Smith Road, to at least give drivers notice that if you're over 10 tons, you shouldn't be turning onto this road. Everything else, I would just say, once again, that we're asking that you reverse the finding of guilt and any alternative, remand it back to the trial court to make an actual ruling as to whether or not the signs are proper. Thank you. Any additional questions? Thank you. I thank both of you for your services this afternoon. I thank the commander and your advisement. We will issue a written decision as quickly as possible. The court will now stand in the jury process for a final judgment.